IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **LORIE POTTER,** | ) |
| **Plaintiff,** | ) |
| v. | ) CIVIL ACTION NO. 5:14-CV-315 (MTT) |
| **DOOLY COUNTY, GEORGIA,** *et al.*, | ) |
| **Defendants.** | ) |

**ORDER**

Plaintiff Lori Potter has moved for reconsideration of the Court's order granting in part the Defendants' motion for summary judgment. (Doc. 58). In the alternative, Potter asks the Court to enter partial final judgment pursuant to Fed. R. Civ. P. 54(b).

**I.   MOTION FOR RECONSIDERATION**[1]

Pursuant to Local Rule 7.6, "Motions for Reconsideration shall not be filed as a matter of routine practice." M.D. Ga. L.R. 7.6. "Reconsideration is appropriate only if the movant demonstrates (1) that there has been an intervening change in the law, (2) that new evidence has been discovered which was not previously available to the parties in the exercise of due diligence, or (3) that the court made a clear error of law." *Bingham v. Nelson*, 2010 WL 339806, at *1 (M.D. Ga.) (internal quotation marks and citation omitted). "In order to demonstrate clear error, the party moving for reconsideration must do more than simply restate his prior arguments, and any

---

[1] The Defendants contend the notice of appeal divested the Court of jurisdiction "to grant" Potter's motion. (Doc. 61 at 6). Because the issues in Potter's motion are "separate and distinct from the issues raised in [the] notice of appeal," the Defendants' argument is without merit. *United States v. Reed*, 404 F. App'x 464, 465 (11th Cir. 2010).

arguments which the party inadvertently failed to raise earlier are deemed waived." *McCoy v. Macon Water Auth.*, 966 F. Supp. 1209, 1223 (M.D. Ga. 1997).

Potter argues the Court erred in granting summary judgment to the Defendants on her First Amendment claims. Specifically, Potter contends the Court erred in granting qualified immunity to the Estate of Sheriff Lucius Van Peavy and in concluding that the First Amendment claims against Don Williford and Dooly County should be dismissed.

### A. Sheriff Peavy

#### 1. First Amendment retaliation claim

Potter says the Court wrongly concluded that there was undisputed evidence that Sheriff Peavy's decision to ban her from the county jail was motivated, at least in part, by lawful grounds. (Doc. 58 at 14). Potter argues the Court improperly relied on *Foy v. Holston*, 94 F.3d 1528 (11th Cir. 1996) because her evidence of a "comparator" created a jury issue "as to pretext." (Doc. 58 at 6). Thus, Potter argues "[t]here simply was no undisputed record that Peavy was motivated, even in part, by an objectively lawful consideration and, therefore, no room for *Foy* to apply." (*Id.*).

Potter says *Foy* is not applicable here because this is not a "mixed motive" case. (*Id.* at 7). In that, Potter is clearly wrong; this is a "potential mixed-motive case[]." *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1295 (11th Cir. 2000). There is evidence that Sheriff Peavy could have retaliated for Potter's First Amendment activity. He knew of Potter's First Amendment activity, and when he took his alleged adverse employment action, he sanctioned only Potter and not her colleague (the so-called "comparator") who allegedly engaged in the same improper conduct. (Docs. 37-13 at 78:2-16, 78:22-

79:16; 53 at 13).  Consequently, the Court concluded that a fact issue existed on the question of whether the Sheriff acted on an improper motive when he sanctioned Potter. (Doc. 53 at 13).

But it is clear that Sheriff Peavy also had lawful grounds to sanction Potter: he received a report that Potter had ignored a nurse and jail administrator both of whom had health information regarding an inmate Potter was attending to, and, expressly for this reason, he banned Potter from the LEC.  (Docs. 37-13 at 71:19-25; 37-19 at 54:22-24, 57:6-10; 37-24; 48-6 ¶¶ 67-68, 74).  The real question is whether it is undisputed that Sheriff Peavy relied on this lawful ground, at least in part, when he took his action.

Although the Court disagrees with Potter's legal analysis, factually she raises an interesting point.  Does the fact that the Sheriff did not sanction the comparator create an issue of fact on the question of whether the Sheriff relied at least in part on lawful grounds when he sanctioned Potter?  Again, it is undisputed the Sheriff had lawful grounds, and it is undisputed that he cited these lawful grounds when he informed Williford of his decision to ban Potter from the LEC.  Notwithstanding these undisputed facts, has Potter asserted facts suggesting that the Sheriff did not undisputedly rely on these grounds?

This is not a situation, as Potter suggests, like that in *Bogle v. McClure*, 332 F.3d 1347 (11th Cir. 2003), where the plaintiffs adduced evidence that the defendants' alleged lawful grounds for their actions were in fact a sham.  Again, the Sheriff undisputedly had lawful grounds to act; the question is whether it is undisputed that he *relied* in part on these grounds.  The question is a close one, and case law provides little guidance; but the Court concludes that a jury could reasonably find that,

notwithstanding the existence of lawful grounds, the Sheriff did not act on those grounds based on the evidence that he did not sanction the comparator.  Accordingly, the Court agrees that it cannot be said as a matter of law that Sheriff Peavy relied on lawful grounds when he banned Potter from the LEC.

Because the Court concluded the Estate was entitled to qualified immunity in the order granting summary judgment, the Court assumed Potter had established her prima facie case of a First Amendment retaliation claim.  (Doc. 53 at 13).  Specifically, the Court concluded that there were genuine issues of fact regarding whether Sheriff Peavy was subjectively motivated to ban Potter from the LEC because of her political conduct and whether Sheriff Peavy would have banned Potter even absent her political conduct.  (*Id.*).  As to the second element of her claim, Potter pointed to negative workplace consequences to create a genuine issue of fact, and the Court stated it was debatable whether such consequences would deter a person of ordinary firmness from exercising her First Amendment rights.  (*Id.* at 12).  The Court clarifies that there is a genuine issue of fact whether Sheriff Peavy's ban would deter a person of ordinary firmness from exercising her First Amendment rights.  The ban did not simply create negative workplace consequences for Potter; it also prevented Potter from performing part of her job responsibilities.  Therefore, a reasonable jury could find that the ban would deter a person of ordinary firmness from engaging in protected speech.  That Potter's job responsibilities were adjusted after the ban does not preclude a genuine issue of fact on this element.  *See Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005) ("[T]he effect on freedom of speech … need not be great in order to be actionable." (internal quotation marks and citation omitted)).

Accordingly, Potter has sufficiently established a First Amendment violation to survive summary judgment, and the Estate of Sheriff Peavy is not entitled to qualified immunity under *Foy*. Thus, Potter's motion for reconsideration is **GRANTED** with regard to the Court's order granting summary judgment to the Estate on Potter's federal First Amendment retaliation claim.

### 2. State-law claims against the Estate of Sheriff Peavy

In the order granting summary judgment, the Court declined to exercise supplemental jurisdiction over the state-law claims against the Estate for Sheriff Peavy's alleged violations of the First Amendment of the Constitution of the State of Georgia and tortious interference with employment relations. Because the Estate is not entitled to qualified immunity on the First Amendment retaliation claim, the Court addresses these claims.

With respect to the violation of the First Amendment of the Constitution of the State of Georgia, the Estate moved for summary judgment on the same ground (with the exception of qualified immunity) that it moved for summary judgment on the federal First Amendment claim: that Potter did not sufficiently establish a First Amendment violation.[2] (Doc. 37-1 at 9). Accordingly, the Court denies the Estate's motion for summary judgment as to this claim for the same reasons the Court concluded Potter sufficiently established a constitutional violation as to the federal First Amendment claim.

The Estate moves for summary judgment on Potter's claim for tortious interference with business relations. (Doc. 37-1 at 18). Potter's amended complaint does not assert a claim for tortious interference with business relations. Rather, it

---

[2] The Estate did not assert official immunity as to this claim in its motion for summary judgment.

asserts a claim for tortious interference with employment relations.  (Doc. 35 at 18).  While the two causes of action have some overlap, they are not identical.  Given the Estate's fairly brief discussion in support of its motion for summary judgment on a tortious interference with business relations claim, the Court does not feel it appropriate to rule on the merits of Potter's claim for tortious interference with her employment relations.

### 3. Punitive damages

In its order granting summary judgment to the Estate, the Court necessarily dismissed Potter's claims for punitive damages for Sheriff Peavy's alleged violation of Potter's First Amendment rights.  The Court now addresses the merits of Potter's claims for punitive damages.

In its motion for summary judgment, the Estate argues punitive damages are not available against the estate of a deceased tortfeasor because "punitive damages would not act to deter [Sheriff Peavy] from future wrongdoing."  (Doc. 37-1 at 19).  Potter responds that this position is meritless because "[t]he estate merely stands in the defendant's place and is as liable as the deceased defendant."  (Doc. 48 at 28).

The parties overlook a well-known principle of Georgia law.  When a tortfeasor dies, punitive damages for the tortfeasor's conduct may not be recovered from the tortfeasor's estate.  *Morris v. Duncan*, 126 Ga. 467, 54 S.E. 1045, 1046 (1906).  Clearly, the Estate is entitled to summary judgment on Potter's punitive damages claims on her state-law claims.

The Eleventh Circuit has not addressed the availability of punitive damages against the estate of a deceased tortfeasor in a § 1983 claim.  However, the court has

addressed the issue in another context. In *In re Matter of GAC Corp.*, 681 F.2d 1295, 1301 (11th Cir. 1982), the court, applying bankruptcy law, affirmed the dismissal of a claim for punitive damages "because future wrongful conduct will not be deterred when the punitive damages are paid from the wrongdoer's estate rather than from his own pocket." *Id.*[3] The Eleventh Circuit reasoned that "the effect of allowing a punitive damages claim would be to force innocent creditors to pay for the bankrupt's wrongdoing." *Id.* To support its holding, the Eleventh Circuit relied on analogous law where "numerous cases … held that punitive damages cannot be recovered from the estate of a deceased tortfeasor because the purpose of punitive damages, whether it be punishment or deterrence, would not be served under such circumstances." *Id.* n.5 (citing cases).

Moreover, the Supreme Court, in examining the common law of torts principles that underpin "damages awards under § 1983," explained that "42 U.S.C. § 1988 authorizes courts to look to the common law of the States where this is 'necessary to furnish suitable remedies' under § 1983." *Carey v. Piphus*, 435 U.S. 247, 257, 258 n.13 (1978); *see also Karnes v. SCI Colo. Funeral Servs., Inc.*, 162 F.3d 1077, 1080 (10th Cir. 1998) ("Section 1988 directs courts to … first … determine whether federal law establishes a suitable rule to apply. If no suitable federal rule exists, the Court must then determine whether the state law supplies one. Finally, the court must consider

---

[3] The Court acknowledges that the Seventh Circuit and some bankruptcy courts in the Eleventh Circuit have called into question, qualified, or not followed the Eleventh Circuit's holding that punitive damages are disallowed in bankruptcy. *See In re Friedman's, Inc.*, 356 B.R. 766, 771 (S.D. Ga. 2006) (citing cases). Doubt of the Eleventh Circuit's categorical approach arose when the Supreme Court "rejected the contention that tax penalties may be disfavored categorically." *In re A.G. Fin. Serv. Ctr.*, 395 F.3d 410, 414 (7th Cir. 2005) (stating that *United States v. Noland*, 517 U.S. 534 (1996) "strongly impl[ied] that case-by-case administration of the Code's authority for equitable subordination is the right way to deal with all punitive financial claims"). Notwithstanding the disagreement in *bankruptcy* law over this issue, the Court cites *In re Matter of GAC Corp.* for the principle as applied to the estates of deceased tortfeasors.

whether the state rule, if it exists, is inconsistent with federal law." (citing *Burnett v. Grattan*, 468 U.S. 42, 47-48 (1984)).  Given the Eleventh Circuit's general pronouncement that punitive damages may not be recovered from the estate of a deceased tortfeasor and the clear law of Georgia consistent with the principle, the Court agrees that punitive damages may not be recovered from Sheriff Peavy's Estate.

Accordingly, the Estate's motion for summary judgment is **GRANTED** as to Potter's claims for punitive damages against the Estate.

### B.  Williford and Dooly County

With respect to Williford and Dooly County, Potter argues that a cat's paw theory applies because in a "small town dynamic …, Sheriff Peavy had more sway over Williford than would be found in a supervisor/subordinate relationship," and further, the fact that Williford used a ballot system for the first time in his decision not to hire Potter and never used the ballot system again demonstrates "pretext."  (Doc. 58 at 11-12).

The Court notes that Potter did not raise a cat's paw theory in her motion for summary judgment, and she cites no authority applying such a theory outside an employment setting.  (Sheriff Peavy was an entity separate from Williford and Dooly County).  Essentially, Potter asks the Court to speculate that Sheriff Peavy was a powerful figure in the county, who improperly influenced Potter's employer.  A nice theory, but there is no evidence to support it.  Certainly, as Williford acknowledged, a sheriff is a "very powerful individual," but, as Williford also said, that meant he would have "worked around" a directive from a sheriff as to who could respond to calls at the sheriff's jail.  (Doc. 37-19 at 67:14-19).  This does not support an inference that Williford was motivated to retaliate against Potter by denying her the first promotion.

In any event, Williford is entitled to qualified immunity. (Doc. 53 at 15-17). The evidence demonstrating that Williford was faced with a unanimous vote to promote a different EMT than Potter and then relied in part on that lawful reason when he did not promote Potter is undisputed. (Docs. 37-19 at 91:12-92:12, 123:24-124:15; 48-6, ¶ 84). That this was the first time he had polled employees on such an issue doesn't change those facts. Accordingly, Potter's motion for reconsideration is **DENIED** with respect to the First Amendment retaliation claims against Williford and Dooly County.

Because the Court has granted Potter's motion for reconsideration in part, her motion for entry of partial final judgment, as drafted, is **MOOT**.

## II.     CONCLUSION

For the foregoing reasons, Potter's motion for reconsideration is **GRANTED in part** with respect to the First Amendment retaliation claim against the Estate of Sheriff Peavy and **DENIED in part** with respect to the First Amendment retaliation claim against Williford and Dooly County. For the reasons discussed in this order, the Estate's motion for summary judgment is **DENIED** with respect to the federal First Amendment retaliation claim and the state-law claim for violations of the First Amendment of the Constitution of the State of Georgia, **DENIED** with respect to a state-law claim for tortious interference with "business" relations, and **GRANTED** with respect to Potter's claims for punitive damages.

Potter's motion to enter partial final judgment is **DENIED as moot**.

**SO ORDERED**, this 2nd day of August, 2016.

                                            S/ Marc T. Treadwell
                                            MARC T. TREADWELL, JUDGE
                                            UNITED STATES DISTRICT COURT